OPINION
Appellant, Jeanie Ann Stapleton, appeals a Butler County Court of Common Pleas, Juvenile Division, judgment entry granting permanent custody of Sarah Jean Stapleton to the Butler County Children Services Board ("BCCSB"). For the reasons that follow, we affirm the decision of the trial court.
On July 3, 1996, BCCSB filed a complaint in juvenile court, alleging that Sarah (DOB 10/23/91) was a neglected child. Sarah is the child of appellant and Burton Lynn Stapleton ("Burt"). The complaint alleged that appellant had left Sarah in the care of a fourteen year old and never returned. In appellant's absence, Sarah's grandmother assumed care of Sarah. The complaint stated that both appellant and Burt had "extensive criminal records, including multiple alcohol related and domestic violence charges." The complaint also stated that Sarah's grandmother had an "extensive history of criminal charges," and that her children had been removed by BCCSB years ago. Upon the filing of this complaint, the trial court granted BCCSB temporary custody of Sarah and she was placed with a foster family.
In an entry filed on September 10, 1996, the trial court found that Sarah was a dependent child as defined by R.C. 2151 et. seq. Following a hearing held on October 15, 1996, the trial court authorized placement of Sarah in the temporary care of her maternal grandmother, Jewel Wathen, with the understanding that BCCSB would closely monitor this arrangement.
In an entry filed on January 1, 1997, Wathen's custody of Sarah was terminated. Apparently, Wathen had been admitted into the mental health unit of a local hospital after she took an overdose of pills and called 911. Appellant was granted temporary custody of Sarah, with the understanding that she would continue to attend AA and NA meetings, follow her case plan, and submit to drug and alcohol testing.
In an ex parte order issued on March 17, 1997, the trial court removed Sarah from appellant's custody and placed her with her foster family again. Appellant had left Sarah in the care of a neighbor and no one, including appellant's family, knew where appellant was or when she would return.
On June 17, 1998, BCCSB filed a motion requesting permanent custody of Sarah. At the conclusion of a permanent custody hearing, the trial court granted the motion for permanent custody on April 8, 1999. Both appellant and Burt filed notices of appeal, but Burt's appellate brief was untimely filed and his appeal was dismissed by this court. Appellant raises the following assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN FINDING THAT IT WAS IN THE BEST INTEREST OF HER DAUGHTER TO HAVE THE APPELLANT'S PARENTAL RIGHTS TERMINATED PERMANENTLY.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN FINDING THAT HER DAUGHTER COULD NOT BE PLACED WITH HER WITHIN A REASONABLE PERIOD OF TIME OR SHOULD NOT BE PLACED WITH HER.
Appellant argues that it was error for the trial court to award permanent custody to BCCSB because its statutory findings were not supported by clear and convincing evidence.
Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it."Id. at 759, 102 S.Ct. at 1397. Therefore, due process requires that the state prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Id. at 479. When deciding a permanent custody case, the trial court is required to make specific statutory findings; the reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In re William S.
(1996), 75 Ohio St.3d 95.
A juvenile court shall grant permanent custody to an agency if the court finds, by clear and convincing evidence, that the best interest of the child warrants a grant of permanent custody and that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C.2151.414(B)(1) and (B)(1)(a); In re Egbert Children (1994),99 Ohio App.3d 492, 495.
When determining whether it would be in the best interest of the child to grant permanent custody of the child to an agency, pursuant to R.C. 2151.414(D), a juvenile court should consider all relevant factors, which include but are not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353 [2151.35.3] or 2151.415 [2151.41.4] of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.[1]
In this case, the trial court found that it would be in the best interest of Sarah to award permanent custody to BCCSB. Appellant asserts that the trial court provided no evidence in its judgment entry to justify its finding that a permanent custody award would be in Sarah's best interest.
Appellant argues that the trial court incorrectly applied a "legal presumption" that Sarah's stay in foster care adversely affected her relationship with appellant. Despite appellant's arguments to the contrary, the trial court did not make a legal presumption that the bond between appellant and Sarah was diminished by Sarah's foster family care. The trial court's judgment entry states that "Sarah's current relationship with her mother has, of course, been adversely affected by the separation imposed by Sarah's placement in foster care which was necessitated by mother's chronic alcohol dependncy." We interpret this sentence to mean that appellant's alcohol use negatively impacted the mother-daughter relationship. There is sufficient evidence to support this conclusion.
Appellant and Burt had a nine and one-half year relationship, which included two marriages, two divorces, and a history of alcohol abuse and domestic violence. Even after their daughter was taken into the custody of BCCSB, they were not able to keep these problems under control.
Burt reported that appellant allegedly stabbed him in the back during an altercation at his home on March 22, 1997. On March 25, 1997, appellant called her caseworker and said that she had been drinking with Burt. Afterwards, appellant admitted herself into the psychiatric unit of a local hospital. She was discharged the next day and then checked herself into an alcohol treatment program.
On May 21, 1997, the guardian ad litem and appellant's caseworker saw appellant and Burt enter a pub at about 11:45 a.m. and begin drinking beer. Appellant had a restraining order against Burt at the time. Appellant told her caseworker that there was a warrant out for her arrest for a violation of probation and she assumed that she would be incarcerated that day. Upon the advice of her caseworker, appellant turned herself over to the police and contacted her employer to retain her job.
On August 6, 1997, appellant called her caseworker and said that she was getting back together with Burt and would "probably get married again." She was planning on moving back in with Burt. About one week later, Burt called the caseworker to say that they were not getting back together again after all.
Beginning in August 1998, appellant underwent treatment for alcohol dependency at Chaney Allen in Cincinnati for seventy-three days. On October 14, 1998, appellant began drinking again, became involved with Burt, was arrested for disorderly conduct, and was sentenced to a thirty-day jail term. On November 2, 1998, a caseworker brought Sarah to visit appellant. Appellant, who was intoxicated, admitted accompanying Burt to a bar earlier that day. On November 9, 1998, appellant called her caseworker to cancel a scheduled visit with Sarah, stating that she was with Burt and "he's all messed up trying to figure out this stuff, I'm all wrapped up in him."
At the permanent custody hearing, appellant asserted that she was no longer involved with Burt. Appellant stated that Burt had become violent with her while in the presence of Sarah and she had a restraining order against Burt. However, witnesses saw appellant and Burt arrive together for court on the first day of the permanent custody hearing. Appellant explained that Burt had seen her walking to the hearing, had offered her a ride, and she accepted.
Andrea Keenan, a play therapist and a family therapist at Catholic Social Services, has been treating Sarah since July 1997. Keenan testified that Sarah has concerns about her parents drinking and fighting. Keenan testified that Sarah is much better at openly expressing her thoughts and feelings than she was at the beginning of treatment. Despite this progress, Keenan insisted that Sarah needs permanence in her life as soon as possible. Sarah, now eight years old, was four years old when BCCSB first took temporary custody of her.
The guardian ad litem recommended that BCCSB be granted permanent custody of Sarah. She observed that although there is a close bond between Sarah and both of her parents, appellant and Burt have failed to prove that they can provide their child with proper care, as they apparently "have chosen alcohol over their child."
The trial court reviewed the factors of R.C. 2151.414(D) and found that: (1) appellant's alcohol use adversely affected her relationship with Sarah; (2) Sarah had expressed a need for permanence in her life; (3) Sarah has been in foster care for a significant period of time; (4) and that a legally secure permanent placement of Sarah could not be made without a grant of permanent custody. Reviewing the record, there is clear and convincing evidence to support the trial court's conclusion that granting permanent custody to BCCSB was in Sarah's best interest.
In addition to determining the child's best interest, the juvenile court must determine whether the child can be placed with a parent within a reasonable time. R.C. 2151.414(B)(1)(a). The court shall enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C.2151.414(E) apply, including the following, which were applied by the trial court:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353[2151.35.3] of the Revised Code;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]
The trial court found that Sarah could not be placed with Burt or appellant within a reasonable period of time or should not be placed with either parent. Appellant argues that the court failed to cite evidence that her problems with alcohol abuse so limited her ability to parent that she could not regain custody of Sarah within a reasonable time. We disagree.
Under R.C. 2151.414(E)(1), the trial court found that the primary causes of the removal of Sarah from appellant's care, her alcoholism and concerns about domestic violence between her and Burt, had not been remedied. The testimony demonstrated that appellant and Burt's "successful" completions of treatment programs for alcohol abuse were followed by serious relapses. On the witness stand, Burt denied that he was an alcoholic, despite that fact that his driver's license had been suspended until August 1999 due to his latest DUI charge. Burt also downplayed the harmful impact that domestic violence has had upon Sarah.
Under R.C. 2151.414(E)(2), the trial court found that appellant and Burt's alcohol dependencies prohibited both of them from providing an adequate permanent home for Sarah at the present time or within the next year. The record contains sufficient evidence that appellant and Burt's struggle with alcohol dependency remains a significant barrier to their parenting and would remain so within the next year.
Finally, the trial court found that R.C. 2151.414(E)(4) (lack of commitment to the child) was applicable. There was testimony that appellant and Burt did not consistently attend counseling sessions and visitations. The trial court found that as of the date of the last hearing (March 9, 1999), neither parent had visited Sarah since December 1998. By failing to regularly visit Sarah, appellant and Burt showed a lack of commitment toward their daughter.
We find that the trial court made its findings according to the statutory guidelines of R.C. 2151.414 and that these findings are supported by clear and convincing evidence. Therefore, appellant's assignments of error are overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] A new version of R.C. 2151.414 took effect on October 29, 1999, after the final judgment in this case.